IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JOHN WILLIAM SCHARNHORST, III                                                    PLAINTIFF

v.                      Civil No. 5:22-CV-05243-TLB-CDC

CAPTAIN NOLAN AKE; SERGEANT CARLOS PINEDA;
SERGEANT JACOB ALLEN; DEPUTY GRANADOS;
DEPUTY H. EOFF; CORPORAL L. CRADDUCK;
CORPORAL D. ROLLINS; DEPUTY SCHMITT;
DEPUTY M. REDMOND; DEPUTY MONTANO;
DEPUTY DRUMRIGHT; DEPUTY DERSAM; DEPUTY E. FRYE;
CORPORAL TATE; OFFICER R. PHIPPS; SERGEANT FOSTER;
CORPORAL CORLEY; and CORPORAL T. MULVANEY,                           DEFENDANTS

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff John William Scharnhorst, III, filed the above-captioned civil rights action pursuant to 42 U.S.C. § 1983.[1]  Plaintiff proceeds *pro se* and *in forma pauperis*.  Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3), the Honorable Timothy L. Brooks, United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation on Defendants' Motion for Partial Summary Judgment for Failing to Exhaust Administrative Remedies ("Partial Summary Judgment Motion"). (ECF No. 19).  Alongside the Partial Summary Judgment Motion, Defendants filed a memorandum (ECF No. 20) and statement

---

[1] This is one of seven actions Plaintiff has initiated in this District. *See Scharnhorst v. Cantrell, et al.*, Case No. 5:22-cv-05138-TLB-CDC (W.D. Ark. July 15, 2022); *Scharnhorst v. Helder et al.*, Case No. 5:22-cv-05167-TLB-CDC (W.D. Ark. Aug. 10, 2022); *Scharnhorst v. Cantrell, et al.*, Case No. 5:22-cv-05176-TLB-CDC (W.D. Ark. Aug. 30, 2022); *Scharnhorst v. Cantrell, et al.*, Case No. 5:22-cv-05218-TLB-CDC (W.D. Ark. Oct. 19, 2022); *Scharnhorst v. Cantrell et al.*, Case No. 5:22-cv-05232-TLB-CDC (W.D. Ark. Nov. 28, 2022); *Scharnhorst v. Cantrell et al.*, Case No. 5:22-cv-05238-TLB-CDC (W.D. Dec. 14, 2022).

1

of facts. (ECF No. 21). Plaintiff has responded (ECF No. 29), and this matter is now ripe for consideration. For the reasons outlined below, the undersigned recommends that Defendants' Motion for Partial Summary Judgment be granted.

## BACKGROUND

The sole issue before the Court on Defendants' Motion for Partial Summary Judgment is whether the Plaintiff, a prisoner,[2] first exhausted his administrative remedies in accordance with 42 U.S.C. § 1997 before initiating this action. (ECF No. 19). After preservice review of Plaintiff's Complaint pursuant to 28 U.S.C. § 1915A(a), claims against the following defendants remained pending: Captain Nolan Ake, Sergeant Carlos Pineda, Sergeant Jacob Allen, Deputy Granados, Deputy H. Eoff, Corporal L. Cradduck, Corporal D. Rollins, Deputy Schmitt, Deputy M. Redmond, Deputy Montano, Deputy Drumright, Deputy Dersam, Deputy E. Frye, Corporal Tate, Officer R. Phipps, Sergeant Foster, Corporal Corley, and Corporal Mulvaney. (ECF No. 11). Of those, Defendants request summary judgment on the issue of exhaustion only as to Deputy Schmidt, Deputy Dersam, and Deputy E. Frye for failure to provide Plaintiff with a pencil. *See* (Partial Motion for Summary Judgment, at ¶¶ 6-7 (ECF No. 19)). **This report and recommendation, therefore, only addresses this claim as to these three defendants.**

With respect to Defendants Schmidt, Dersam, and Frye, Defendants assert that Plaintiff did not first exhaust his administrative remedies before filing this action. *Id.* Defendants claim that

---

[2] At all times relevant to the factual predicate to this action, Plaintiff was a pretrial detainee at the Washington County Detention Center (WCDC). Publicly accessible state court records show that Plaintiff has since resolved his state court criminal cases. *See, e.g.*, *State of Arkansas v. Scharnhorst*, 72CR-21-1768 (Ark. Cir. Ct. Feb. 15, 2023) (Amend. Sent. Order) (AOC Public Court Connect). He is currently serving a term of imprisonment for those convictions at the Arkansas Division of Correction. *See* Inmate Search, https://apps.ark.org/inmate_info/search.php (last visited August 23, 2023).

2

WCDC policy allows inmates claiming that they were "subjected to abuse or an abridgement of [their] civil rights while being detained" to file a grievance on the WCDC kiosk in their cellblock. *See* (Statement of Indisputable Facts, ¶ 28 (ECF No. 21)). According to the WCDC Detention Center Handbook, a grievance "must be submitted within eight hours from the time the event complaint of occurred." (Ex. A6, Detainee Handbook, p. 19 (ECF No. 21-5)).[3] Further,

> The grievance should include:
>
> A. The date and approximate time of the event
> B. The name(s) of the person(s) involved
> C. The name(s) of any witness(es)
> D. Pertinent details of the event.

*Id.*

The WCDC Policies and Procedures Manual differs, however, in that it provides "[g]rievances must be made within 10 days of the alleged incident unless there is good cause for a reasonable delay. [And] [g]rievances filed more than 30 days following the alleged incident will not be considered." *See* (Ex. A5, p. 2 (ECF No. 21-4)).

Defendants contend Plaintiff entered hundreds of kiosk submissions from the day he entered the WCDC – November 18, 2021 – until he filed this action on December 15, 2022. (ECF No. 19, ¶ 12)). Further, Defendants assert that he filed several submissions against "Defendants Redmond, Rollins, Montano, Drumwright [sic], Tate, Phillips, and Foster" about them not providing him with a pencil upon his request, but he did not file any submissions about this topic with respect to Defendants Schmidt, Dersam, or Frye. *Id.* at ¶ 16. Defendants contend that although Plaintiff's verified Complaint alleges that Defendants Schmidt, Dersam, and Frye denied him a

---

[3] Where possible, the Court cites to specific paragraphs. In all other instances, the Court references the CM/ECF pagination at the top of each page.

pencil on or after February 9, 2022, Plaintiff does not identify any grievance or request against any of these three defendants. *Id.* at ¶ 17.

In response, Plaintiff asserts the following: "(1) [he had] been told not to file multiple grievances over the same issue; (2) [he] actually had filed so many grievances [that he] had to enter them in other fields; (3) [his] grievances were going unanswered; and (4) that filing too many grievances could be construed as 'abusing the system.'" (ECF No. 29).

## **LEGAL STANDARD**

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party." *Ward v. Olson*, 939 F. Supp. 2d 956, 961 (D. Minn. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). A fact is material only when its resolution would affect the outcome of a case. *Anderson*, 477 U.S. at 248.

Further, the moving party bears the initial burden of identifying "those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Jackson v. United Parcel Serv., Inc.*, 643 F.3d 1081, 1085 (8th Cir. 2001). In response, the nonmoving party "may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial." *Forrest v. Kraft Foods, Inc.*, 285 F.3d 688, 691 (8th Cir. 2002). In considering a summary judgment motion, the court views all the evidence and inferences in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255.

## **ANALYSIS**

Plaintiff filed this action pursuant to 42 U.S.C. § 1983 and as a prisoner; as such, his claims

4

are subject to the Prison Litigation Reform Act (PLRA). Section 1997e(a) of the PLRA "requires a prisoner to exhaust 'such administrative remedies as are available' before suing over prison conditions." *Booth v. Churner*, 532 U.S. 731, 733 (2001). This requirement is mandatory. *See Chelette v. Harris*, 299 F.3d 684, 687 (8th Cir. 2000). But "[i]f an inmate fails to exhaust one or more discrete claims raised in the § 1983 complaint, the PLRA requires only that the unexhausted claim or claims be dismissed – it does not require that the complaint be dismissed in its entirety." *Abdul-Muhammad v. Kempker*, 486 F.3d 444, 446 (8th Cir. 2007) (citing *Jones v. Bock*, 549 U.S. 199 (2007)).

### I.   The WCDC Grievance Procedure Contained in the Detainee Handbook Controls

Proper exhaustion under Section 1997e(a) "demands compliance with the agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). The first question for the Court, then, is to determine what WCDC's grievance procedure requires. According to the Defendants, the WCDC has two procedural requirements.

First, the WCDC Handbook: Rules and Regulations for Detainees ("Handbook") sets forth the following grievance procedure:

> You are allowed to file a grievance if you feel you have been subjected to abuse or an abridgement of your civil rights while being detained. All grievances will be done on the kiosk in your cellblock.
> A grievance *must* be submitted within eight hours from the time the event complained of occurred. The grievance should include:
>
> A. The date and approximate time of the event
> B. The name(s) of the person(s) involved
> C. The name(s) of any witness(es)

    D. Pertinent details of the event

    All grievances are reviewed by the Jail Administrator or their designee. If you feel your grievance was improperly handled, you *may* appeal to the Sergeant or Lieutenant.

(ECF No. 21-5) (emphasis added).

This Handbook is published on the WCDC kiosk system "for easy access and reference by detainees." (Statement of Indisputable Material Facts at ¶ 40 (ECF No. 21)). The Handbook itself contains the following directive: "*[e]ach Detainee will read the Detainee Handbook at the booking process. A Detainee Handbook will be available on the kiosk in each cellblock.* . . . Failure to read this handbook is not an acceptable reason for noncompliance with the contents herein." (Ex. A6, Washington County Detention Center Handbook, p. 3 (ECF No. 21-5)) (emphasis in the original). Plaintiff does not specifically dispute that this Handbook – and, by extension, the grievance procedure contained therein – was available to him on the kiosk. *See generally* (ECF No. 48). Accordingly, for the purposes of summary judgment, the Court considers the assertion that this Handbook is available to WCDC inmates on the facility's kiosks to be undisputed. Fed. R. Civ. P. 56(e)(2).

The second WCDC inmate grievance procedure is outlined in the WCDC Policy and Procedures Manual ("Manual"). (Ex. A5, Policies and Procedures at pp. 1-2 (ECF No. 21-4)). This Manuel describes the inmate grievance procedure as follows: "[an inmate] grievance *shall* be made by utilizing the kiosk provided in the cell block. Grievances *shall* be made promptly after the incident has occurred . . . . Grievances *must* be made within 10 days of the alleged incident unless there is good cause for reasonable delay. Grievances filed more than 30 days following the alleged incident *will not* be considered." *Id.* (emphasis added). Further, "[t]he grievance *shall* state fully the time, date, location and names of those detention officers and/or staff members

6

involved and pertinent details of the incident, including the names of any witnesses and how the incident personally affected the detainee." *Id.* (emphasis added).

The primary difference between the grievance procedure set forth in the Handbook and the one described in the Manual is one of timing. Pursuant to the Handbook, to be timely, the grievance must be submitted within 8 hours of the incident giving rise to the grievance. (Ex. A6, Washington County Detention Center Handbook at p. 19 (ECF No. 21-5)). By contrast, the Manual provides that a grievance must be submitted within 10 days – and not more than 30 days – of the alleged incident. (Ex. A5, Policies and Procedures at pp. 1-2 (ECF No. 21-4)).

Inexplicably, although the Defendants note this difference, Defendants do not reconcile it or explain why it exists. *See* (Statement of Indisputable Facts at ¶¶ 29, 44 (ECF No. 21)). Further, Defendants make no argument about whether the Handbook or the Manual controls. In the absence of any guidance from either party, this Court turns to the plain language of Section 1997e(a), which requires prisoners to exhaust "such administrative remedies *as are available*." 28 U.S.C. § 1997e(a). Available means "capable of use for the accomplishment of a purpose: immediately utilizable . . . accessible." *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001).

Although the Handbook's timing requirements are significantly more restrictive than those outlined in the Manual, there is no dispute of material fact that the Handbook is available to the detainees to access on the kiosk. By contrast, neither party claims that detainees can access – or even that they are aware of – the Manual, let alone the grievance procedure described therein.[4] Accordingly, this Court finds that the Handbook's grievance procedure is accessible to the WCDC

---

[4] Notably, in *Scharnhorst v. Cantrell, et al.*, Case No. 5:22-cv-05218-TLB-CDC (W.D. Ark. Oct. 19, 2022), Plaintiff argues that WCDC detainees do not have access to the Washington County Detention Center Policies and Procedures Manual. *See* (ECF No. 48).

inmates and therefore "available" for use within the meaning of § 1997's exhaustion requirement. In determining whether Plaintiff first exhausted his administrative remedies with respect to Defendants Schmidt, Dersam, or Frye, the Court must consider whether Plaintiff exhausted the grievance procedure outlined in the Handbook and turns to this task.

## II.     Plaintiff's Claims.

In the Complaint, Plaintiff claims that the WCDC pencil policy – authored by Defendant Captain Ake – violates his constitutional rights. *See* (Complaint at p. 13 (ECF No. 1)).   According to Plaintiff, WCDC staff did not provide him with a pencil because he is not indigent, and thus, has the means to purchase pencils; nevertheless, pencils are not available for purchase through the WCDC commissary system. *Id.*   Plaintiff contends that although he has repeatedly requested information on how to obtain a pencil and/or requested pencils directly from WCDC staff, those requests generally go unanswered. *Id.*   Plaintiff claims that on February 9, 2022, he requested a pencil from Defendants Schmitt and Dersam at various times throughout the day, but they never supplied him with a pencil. *Id.* Similarly, Plaintiff alleges that on February 19, 2022, he requested a pencil from Defendant Frye, but that request also went unanswered. *Id.*

### A. Plaintiff Failed to Exhaust the WCDC Grievance Procedure Regarding the Claims against Defendants Schmitt, Dersam, and Frye.

Defendants contend that in contravention of the WCDC grievance policy, Plaintiff did not file any grievances against Defendants Schmitt, Dersam, or Frye for failing to supply him with a pencil on February 9, 2022, or February 19, 2022. (Motion for Partial Summary Judgment at ¶¶ 14-15 (ECF No. 19)).   In support of their assertion, of the 853 or so grievances and requests Plaintiff submitted from November 18, 2021 (the date Plaintiff entered the WCDC) until his transfer to a different facility on January 17, 2023, Defendants submitted those grievances and requests related

8

to Plaintiff's request for a pencil for the Court's consideration.[5] (ECF No. 20, p.6).

For his part, Plaintiff also filed copies of his kiosk submissions for the Court to consider. (Resp., Ex. A-F (ECF No. 29)). Accordingly, the Court considers these kiosk submissions – those submitted by Plaintiff, *see id.*, and those submitted by the Defendants, *see* (Ex. A-2, Requests and Grievances (ECF No. 21-3)), as the universe of kiosk submissions the parties wish for the Court to consider in determining whether to grant Defendants' Motion for Partial Summary Judgment. Upon review, none of the kiosk submissions filed by Plaintiff suggest that he filed a grievance against Defendants Dersam, Schmitt, or Frye about their failure to supply him with a pencil upon his request. *See* (Resp. Ex. A-F (ECF No. 29)). Plaintiff has failed to submit any affidavits or declarations addressing Defendant's assertion that Plaintiff did not file any grievances or requests against Defendants Schmitt, Dersam, or Frye for failing to supply him with a pencil on February 9, 2022, or February 19, 2022. *See generally* (Resp. (ECF No. 29).[6] This Court therefore finds

---

[5] According to Defendants, the WCDC kiosk system allows detainees to file submissions under "grievances" or "requests." *See* (Aff. T. Mulvaney, at ¶ 20 (ECF No. 21-1)). Detainees are directed to submit requests under the appropriate "request" category to "help in getting [the detainee's] question answered quickly." (Ex. A6, Detainee Handbook, at p. 19 (ECF No. 21-5)). Plaintiff submitted his grievances wherever he could, regardless of the category. *See generally*, (Ex. A-2, Requests and Grievances (ECF No. 21-3)).

[6] This Court previously informed Plaintiff that in responding to Defendants' summary judgment motion, Plaintiff could not rely on mere allegations. (ECF No. 22). Instead, the Court explained that his response must include legal argument, as well as affidavits, prison records, or other evidence establishing a genuine issue of material fact for trial. *Id.* Plaintiff's response, however, does not include any affidavits sworn and subscribed to by a notary public or executed under penalty of perjury pursuant to 28 U.S.C. § 1746. Thus, the Court considers Plaintiff's verified complaint, (ECF No. 1), to determine whether there are any material fact disputes for trial. *See Ward v. Moore*, 414 F.3d 968, 970 (8th Cir. 2005) (concluding that plaintiff's second amended complaint is the equivalent to an affidavit and can serve as plaintiff's response to defendants' summary judgment motion because it was verified under penalty of perjury) (citing *Spear v. Dayton's*, 733 F.2d 554, 555-56 (8th Cir. 1984)). To the extent that Plaintiff's argument in response to Defendants' Motion for Summary Judgment endeavors to contain factual assertions, this Court considers these assertions unsupported. *See* Fed. R. Civ. P. 56(c).

the factual assertion – that Plaintiff did not file a grievance or request against Defendants Schmitt, Dersam, or Frye for failing to supply him with a pencil on February 9, 2022, or February 19, 2022 – to be an undisputed material fact. Fed. R. Civ. P. 56(e)(2).

As noted above, the grievance procedure outlined in the WCDC Detainee Handbook provides:

> A grievance *must* be submitted within eight hours from the time the event complained of occurred. The grievance should include:
>
> A. The date and approximate time of the event
> B. The name(s) of the person(s) involved
> C. The name(s) of any witness(es)
> D. Pertinent details of the event

(ECF No. 21-5) (emphasis added).

Because the WCDC grievance procedure requires inmates to submit grievances naming the persons involved in the grievance, and there is no dispute of material fact that Plaintiff did not do so here, the Court finds that Plaintiff failed to pursue – much less exhaust – his administrative remedies with respect to this claim against these three defendants before filing this action in federal court.

### B. "As Available"

This factual finding, however, does not end the analysis. Plaintiff asks the Court to consider "whether filing specific grievances against [Defendants Schmitt, Dersam, or Frye] would have been useful, productive, or necessary." (Resp. (ECF No. 29)). As the Court understands it, Plaintiff contends that the WCDC grievance procedure was not "available" to him.

To be sure, as noted above, Section 1997e(a), only requires prisoners to exhaust "such administrative remedies *as are available*." 28 U.S.C. § 1997e(a) (emphasis added). The Supreme Court has recognized "three kinds of circumstances in which an administrative remedy, although

10

officially on the books, is not capable of use to obtain relief," *Ross v. Blake*, 578 U.S. 632, 643 (2016), and is, therefore, not "available" within the meaning of § 1997. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* Finally, an administrative procedure is unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644.

In support of his claim, Plaintiff asks the Court to "consider the volume of requests and grievances [he] filed in attempts to remedy the issue." (Resp. (ECF No. 29) (citing (Ex. A-2, Requests and Grievances (ECF No. 21-3)). The Court construes this assertion as falling under the first category of circumstances where an administrative procedure is "unavailable" to detainees because the procedure itself operates as a "dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross*, 578 U.S. at 643.

It is beyond dispute that Plaintiff filed multiple kiosk submissions on the issue of WCDC's pencil policy and WCDC personnel's failure to promptly supply him with a pencil upon his request. *See, e.g.*, (Ex. A-2, Requests and Grievances at pp. 4, 6, 12, 15, 16, 17 (ECF No. 21-3)). But it is equally clear that in filing these submissions about his access to pencils, Plaintiff received some relief: on February 4, 2022, Plaintiff filed a grievance requesting a pencil. (*Id.* at p. 12). On that same day, Sgt. Will Foster responded, "one will be given." *Id.* Even if (as Plaintiff maintains), he did not receive a pencil *that day*, his kiosk submissions show that he was provided with two pencils on the morning of February 8, 2022; in this respect, the Court notes that, later

11

that same day, Plaintiff filed a grievance requesting to exchange one of those now-used pencils for a sharpened one. *Id.* at p. 17. WCDC's grievance procedure, then, is not like the one described in *Ross*, where "a prison handbook directs inmates to submit their grievances to a particular administrative office – but in practice that office disclaims the capacity to consider those petitions." *Ross*, 578 U.S. at 643.  Here, by contrast, the undisputed record illustrates that when Plaintiff entered a kiosk submission, WCDC staff responded, providing him with *some* relief, albeit not as quickly, as consistently, or in the manner Plaintiff would have liked.[7]  Accordingly, the WCDC's grievance procedure is not a "dead end" rendering it unavailable to detainees.

Next, the Court considers whether WCDC's grievance procedure is "so opaque that it becomes, practically speaking, incapable of use." *Id.*  By way of example, the Supreme Court noted in *Ross* that this situation would arise where "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* at 644.  Plaintiff makes no claim that the WCDC grievance procedure was difficult for him to understand or follow. *See* (Resp. (ECF No. 29)).

This leaves the third category of circumstances, described by the Supreme Court in *Ross* as situations where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.*  As the Court understands it, Plaintiff's remaining arguments as to why the grievance procedure was "unavailable" to him fall under this category.

---

[7] To be clear, the Court is not commenting on the merits of Plaintiff's claims that the Defendants' pencil policy and their failure to timely supply him with a pencil upon his request violated his constitutional rights.  Rather, the focus here is on whether the WCDC's grievance procedure for obtaining an institutional remedy for those claims was available to him within the meaning of § 1997.  For the reasons outlined above, the Court finds that it was.

Specifically, Plaintiff claims that on December 28, 2021, Deputy Dominic Nunziato told him to "please restrain from putting in multiple requests for the same thing." (Resp., Ex. A (ECF No. 29). And that on February 2, 2022, Corporal Tom Mulvaney said, "[p]lease do not keep adding issues to an already submitted grievance about another officer." (Resp., Ex. B (ECF No. 29)). But Plaintiff does not allege – and submits no facts in support of such allegations – that these statements *prevented* him from filing kiosk submissions regarding his grievances. *Cf. Townsend v. Murphy*, 898 F.3d 780, 783 (8th Cir. 2018) (concluding that prison official's misstatement about the prison's grievance procedure, combined with the fact that plaintiff was denied access to the library, which contained the only copy of the grievance procedure, rendered that procedure "unavailable" under § 1997). Indeed, Plaintiff's kiosk submissions show that he continued to file kiosk submissions about his grievances despite these admonitions. *See generally* (Resp. (ECF No. 29)); (Ex. A-2, Requests and Grievances (ECF No. 21-3)).

Plaintiff argues that he filed grievances under different categories because he "maxed out" the number of submissions he could file under "grievances." (Resp., Ex. C (ECF No. 29)). There appears to be no dispute that Plaintiff filed his grievances under any open and available kiosk category. *See generally* (Ex. A-2, Requests and Grievances (ECF No. 21-3)). Even so, this does not render the WCDC grievance procedure "unavailable" for two reasons: (1) the WCDC grievance policy, by its terms, does not *require* detainees to file grievances under the "grievance" category, *see* (Ex. A6, Detainee Handbook, p. 19 (ECF No. 21-5)), and (2) the record shows that WCDC personnel responded to Plaintiff's grievances *regardless* of the category under which they were filed. For example, the record reflects the following exchange between Plaintiff and Cpl. Tom Mulvaney under the "trustee/work release/comm svc" category of the kiosk on February 8,

13

2022:

> Plaintiff: 98% of 1983's fail. In a pod of 60+ detainees spending time on the law library is met with resistance by other inmates. Spending over $4 for color pencils which cannot be sharpened is an absurd suggestion. I want access to the ADEQUATE LAW LIBRARY which you are required to provide, I want ASSISTANCE in filing legal paperwork, not antagonism and obstruction. I want consistent access to a functional writing impliment [sic] as a policy and not be forced to beg for them on the kiosk and in person to the state and trade away my food just to manage my needs. These are my demands, do as you see fit and I will respond accordingly, I have been very clear.
>
> Tom Mulvaney: I am not going back and forth with you and somewhat with you sir. I have given you instructions on how to get to the law liabrary at the courthouse. We are not required to assist you with legal matters, and in fact it is illegal for us to do so. If you need a pencil all I can suggest is you ask a floor officer, or submit a request. I can not go back there and babysit everyone to ensure they are doing their job, or at least to the best of their ability. There is no need for further response regarding this, and I am closing it out, unless you want a Lt. to respond and I will try to forward this ? ? Cpl. Mulvaney
>
> Plaintiff: Please forward to a lieutenant, somebody needs to babysit the people back here.

(Ex. A-2, Requests and Grievances, pp. 24-25 (ECF No. 21-3)). Two days later, on February 10, 2022, Lt. Nolan Ake submitted the following response on the kiosk, under the same thread in the "trustee/work relase/comm svc" category:

> Nolan Ake: Sir you have been provided several pencils over the last four days. We exchange pencils on Sunday when we do indigents. You can exchange your pencils at that time.

*Id.* at p. 25.[8]

---

[8] The kiosk entries are date and time stamped. *See generally* (Ex. A-2, Requests and Grievances

14

Accordingly, to the extent that Plaintiff argues that he needed to submit grievances under different categories because he "maxed out" on the submissions he could file under the "grievance" category, the Court is not persuaded that this rendered the grievance procedure "unavailable" to him because the record shows that WCDC staff responded nevertheless responded to those submissions.

Finally, Plaintiff asserts that Cpl. Tom Mulvaney "essentially threat[ened] [him] for 'abusing the system' by filing 'too many grievances.'" (Resp. at p. 2 (ECF No. 29)). Specifically, Plaintiff references the following exchange. Plaintiff submitted a kiosk submission under "Grievances" on August 28, 2022 at 1:12:28 PM:

> Plaintiff: It took 36 days to have this issued addressed when I had the same problem in A-6. I have been threatened by Corporal Mulvaney for 'abusing the system' by filing too many complaints over the same issue. I will do whatever it takes to get you guys to maintain safe and healthy living quarters.

Cpl. Tom Mulvaney responds on September 1, 2022, at 9:00:08 AM:

> Tom Mulvaney: Sir, I will submit maintenance requests regarding these issues, although the plumbing issue has been addressed by maintenance a couple of times already I believe. Secondly, I never "threatened" you with any thing. I simply stated, "The way you have done that could be construed as abuse of the system." That was copied right out of that repsonse I gave in that previous request or grievance. Cpl. Mulvaney

(Resp. Ex. F (ECF No. 29)).

---

(ECF No. 21-3)). The record shows that Plaintiff entered the first kiosk submission detailed in full *supra* at 10:29:08 AM on February 8, 2022. *Id.* at p. 24. Cpl. Tom Mulvaney responded at 11:13:39 AM that same day. *Id.* at p. 25. Plaintiff entered a separate kiosk submission under the "trustee/work release/comm svc" category saying that he "would like to exchange one of the two pencils that Corporal Alderson [had given him] [that] morning" on February 8, 2022, at 11:34.22 AM. *Id.* at p. 26. Thus, to the extent that Plaintiff's initial submission complained about getting a pencil, it appears that that grievance was resolved that same day, well before Lt. Ake weighed in two days later, on February 10, 2022. *Id.* at p. 25.

15

As a threshold matter, this Court doubts that Cpl. Mulvaney's statement warning Plaintiff that his conduct could constitute "an abuse of the system" qualifies as a "threat" that prevented him from accessing the grievance procedure, particularly in light of Plaintiff's prolific use of the grievance system notwithstanding this alleged "threat." *See, e,g.* (Ex. A-2, Requests and Grievances, pp. 33-37 (ECF No. 21-4). In any event, the claim at issue here is that Deputies Schmitt, Dersam, and Frye failed to immediately supply him with a pencil upon his request in February 2022, approximately six months *before* Plaintiff claims he was threatened by Cpl. Mulvaney. *See* (Comp. (ECF No. 1)). Accordingly, this threat – real or perceived – in August 2022 has absolutely no bearing on whether the WCDC grievance procedure was "unavailable" to Plaintiff in February 2022 when the factual predicate of his claim against Defendants Dersam, Schmitt, and Frye arose. The undersigned finds that the WCDC grievance procedure was "available" to Plaintiff, but Plaintiff did not avail himself of that process with respect to his claim against Defendants Schmitt, Dersam, and Frye for failing to supply him a pencil on February 9 and 19, 2022.

In summary, Plaintiff filed multiple kiosk submissions complaining about WCDC's pencil policy and various WCDC staff members' failure to supply him with a pencil upon his request. It is undisputed, however, that Plaintiff did not file a grievance against Defendants Schmitt, Dersam, or Frye for failing to supply him with a pencil on February 9, 2022, or February 19, 2022. Further, there is no dispute of material fact that this grievance procedure was "available" to Plaintiff within the meaning of § 1997. Accordingly, Plaintiff's claims against Defendants Schmitt, Dersam, and Frye should be dismissed for failure to first exhaust administrative remedies.

## CONCLUSION

For the reasons outlined above, **IT IS RECOMMENDED THAT:** (1) Defendants' Motion for Partial Summary Judgment for Plaintiff's failure to first exhaust his administrative remedies with respect to the claims against Defendants Schmitt, Dersam, and Frye for failing to supply him with a pencil upon his request on February 9, 2022, and February 19, 2022, respectively, (ECF No. 19), be **GRANTED**; and (2) Defendants Schmitt, Dersam, and Frye should be terminated from this action.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

RECOMMENDED this 28th day of August 2023.

*Christy Comstock*
_____
CHRISTY COMSTOCK
UNITED STATES MAGISTRATE JUDGE